Ashburn, J.
I. The first question arises upon the refusal of the court to exclude certain evidence offered by the state — the refusal to charge the jury as requested by ■defendant, and the instructions given on the same point in the general charge.
Among other things, the evidence introduced by the state, tended to prove that defendant was the keeper of a saloon, in violation of the provisions of the fourth section of the Ohio Liquor Law, as charged in the indictment, from April 1, 1871, to January 1, 1873, when he made some •changes in the room and building, bought, and put in it a lot of drugs, including whisky, and abandoned the business •of keeping a saloon. Erom the time he commenced the drug business up to the commencement of .these proceedings, he sold intoxicating liquors to a number of persons, and in various quantities, but none to be drank on the premises where sold. There was evidence tending to prove he sold intoxicating liquors, during the latter period, to persons in the habit of setting intoxicated, to his knowledge.
The state having closed its testimony, defendant moved and requested the court to rule out all evidence offered by the state to prove illegal sales by defendant from April 1, 1871, to January 1, 1873, the last date being the time when he ceased to keep a saloon. The court refused to so rule, and defendant excepted. Touching the same subject-matter, *29 defendant requested the court to specially charge the jury “ That it is necessary to a conviction, under this indictment, that the defendant should have been proven to be unlawfully the keeper of a room of public resort, where intoxicating liquors (other than wine, etc.) were then, and had been theretofore, habitually sold by defendant in violation of law at the time of the commencement or institution of the proceedings against him upon which the indictment was founded.” This instruction the court refused to give,, and defendant excepted. Thereupon the court instructed the jury, “ To convict the defendant, under this indictment, you must be satisfied, beyond a reasonable doubt 1. That the room where the intoxicating liquors are charged to have been sold was a place of public resort. 2. That the-defendant, by agent or otherwise, at some time within the period of time named in the indictment, habitually sold intoxicating liquors (other than ale, beer, cider, and native-wine) in such room contrary to law.” To this instruction defendant excepted.
Defendant claims these rulings to be unsound, because-he was not the keeper of a room of public resort, where intoxicating liquors were habitually sold, in violation of law at the time criminal proceedings were instituted against him; there being then no existing nuisance, he claims he-was not amenable to punishment.
Proceedings against defendant were under the provisions: of the 4th section of the Ohio liquor law. It is as follows “ That all places where intoxicating liquors are sold in violation of this act, shall be taken, held, and declared common nuisances, and all rooms, etc., or other places of public resort where intoxicating liquors are sold in violation of this act, shall be shut up and abated as public nuisances, upon the conviction of the keeper thereof, who shall be punished as hereinafter provided.” S. & C. 1432.
By this act, the keeping of a room of public resort where-intoxicating liquors are habitually sold in violation of law, creates such place of public resort a common nuisance,, which public policy requires should be abated, and that the- *30 keeper thereof should be punished. Punishment to the extent of abating the unlawful business, by closing up the premises, is provided in the section, but punishment for creating and maintaining the nuisance, for any period of time, is provided for in section 8 of the act. It is therein provided: “ And for every violation of the provisions of the 4th section of this act, every person convicted as the keeper of any places therein declared to be nuisances shall forfeit and pay a fine,” etc.
The order to abate the nuisance is not the punishment provided for the offense, but the removal of a thing or -closing up a business obnoxious to the public. This order will be made and enforced when necessary, on conviction ■of the offender, under the restrictions as indicated in Miller § Gibson v. The State, 3 Ohio St. 475. The punishment for the criminal act of creating such nuisance is personal, as provided.in section 8. His abating the nuisance will not relieve the defendant from liability of punishment for the ■criminal act committed, while he maintained the offensive place of public resort. The offender remains personally liable until the right to prosecute is barred by the statute of limitations, or the violated law is satisfied in some other manner. The way provided in the statute is, the offender must be personally punished as an atonement to the law which he has violated.
We think the court ruled correctly on each point in this ■respect excepted to.
II. A question is made as to the right of the adverse party, after interrogating the witness on his present state •of belief as to the existence of a God, and a state of future rewards and punishments, to ask the witness if he had not ■made other and different statements in relation thereto at •other times, for the purpose of calling witnesses to discredit him.
Defendant, Clinton, was examined as a witness in his own behalf, and upon cross-examination by the state’s counsel, was asked, “ Whether he believed in the existence of a •God.” He answered, “I do.” He was further asked, *31 •“ Whether he believed in a state of future rewards and punishment,” and he replied, “ 1 do.” By this course of examination, we think the state made Clinton her own witness, and was bound and concluded by his answers.
Counsel for the state then asked the witness, “ What he had stated on the preliminary trial (giving time, place, and circumstance) as to his belief in the existence of a God and .a future state of existence.”
Defendant objected to the question. The court overruled the objection and defendant excepted.
The witness answered, “ I do not distinctly recollect.” Counsel for the state then asked this further question, “ Whether he did not on that occasion, in answer to the ■question put to him as a witness, state that he did not believe in the existence of a personal God, to whom he was .accountable, and that the only God in which he did believe was that within himself, and of which he was a part.” To this question the defendant objected. The court overruled the objection and defendant excepted. The witness answered, “ I do not distinctly recollect what my answer was' •on that occasion.”
When the defendant had closed his testimony, the state ■called a number of witnesses, to prove what the defendant^ when a witness on the preliminary examination, had said as to his religious belief, who testified that defendant stated his religious belief to be substantially as suggested to him in the last two questions put to him above by the state. Defendant objected to the answers of the witnesses, claiming the matter sought by such examination was incompetent, irrelevant, and not material to the issue, and could not •serve as a foundation on which to discredit him. Objection overruled. Defendant excepted.
Did the court err in this respect to the prejudice of the defendant ?
Sec. 7 of the bill of rights declares, among other things: “No religious test shall be required as a qualification for •office; nor shall any person be incompetent to be a witness *32 on account of his religious belief; but nothing herein shall he construed to dispense with oaths and affirmations.”
This provision of the constitution recognizes and guarantees unqualified liberty of religious faith. But in doing so recognizes the necessity, to the proper administration of law and justice, that all witnesses must testify under the obligations of an oath or affirmation. It then becomes proper to inquire what moral and religious condition will quality a person to take the oath obligation of a witness ; for, since oaths and affirmations can not be dispensed with in the due administration of law, the recognized legal, moral, and religious qualifications of the person to take the-necessary oath, when qualified in that manner, can no more be dispensed with than the oath itself. The obligation is-to be so administered as to most certainly bind the conscience. An oath is no more a part of Christianity than of every other religion in the world. “ Yet,” says Lord Stair, in his institutes of the laws of Scotland, “ it is the duty of the judges, in taking the oaths of witnesses, to do it in those forms that will most reach the consciences of the swearers,, according to their persuasion and custom.” And this,, though the God of the witness’ faith is, according to Christian belief, a false God. If the witness believes in some superior being, whom he recognizes -as a God, who will punish for false swearing, an oath maybe administered according to his belief, and such obligation will satisfy the-requirements of the law, for the reason that it binds his-conscience so as to influence him to speak the truth.
On this question we think thé common law rule is sound. As defined by Welles, O. J., in the learned and celebrated case of Omichund v. Barker, Welles’ Rep. 538 (approved by the act of 1 and 2 Y., c. 105), where the testimony of a person sworn according to the Gentoo religion was received, it may be stated : All persons are competent to be witnesses who believe in the existence of a God, who will punish him if he swears falsely. This rule in no way conflicts with liberty of conscience in matters of religious faith as secured in the bill of rights. Liability to civil punishment alone *33 for perjury, and the fear of such punishment, are held not to supply that sense of moral and conscientious obligation under -which a witness is required to state facts as evidence, and which enlightened men believe to be secured by the sanctions of an oath, taken by one- entertaining a belief that the God of his faith will punish false swearing. In Brock v. Milligan, 10 Ohio, 121, it was substantially held that “ one who believes in the existence of a God, and that an oath is binding on the conscience, is a competent witness, though he does not believe in a future state of rewards and punishments.”
The purpose of the oath is not to call the attention of God to the witness, but the attention of the witness to God; not to call upon him to punish the false-swearer, but on the witness to remember that He will assuredly do so. By thus laying hold of the conscience of the witness, and appealing to his sense of accountability, the law best insures the utterance of truth.
Taylor, in his work on Evidence, vol. 2, § 1247, says: “ But as the administration of an oath supposes that the witness feels a moral and religious accountability to a supreme being, who will justly punish perjury, and from whom no secrets are hid, persons insensible to the obligations of an oath ought not to be admitted as witnesses. The repetition of the words of an oath would, in their case, be an unmeaning formality. It makes no difference from what cause this insensibility may arise; for whether it be occasioned by irreligious opinions, or by imbecility of understanding ; whether the person be an atheist, an idiot, a madman, a drunkard, or a child, so long as he is incapable of comprehending the nature, or feeling the obligation of an oath, he can not be sworn as a witness. This incapacity, however, is only coextensive with the defect.”
Under our constitution the character of a man’s religious belief is not permitted to affect his competency as a witness ; yet, to render him competent to take an oath as a witness, his moral nature must be strengthened, and his conscientiousness be quickened, by a belief in a supreme *34 being, who will certainly, either in this life or the life to come, punish perjury.
The authorities are numerous on this question, and almost uniform, except in the states where modified by constitution or statute laws. Where, as in this state, the oath or affirmation can not be dispensed with/all concur in the propriety of administering the oath to witness in the mode by the witness believed to be the most binding on his conscience.
On the trial, the state, on cross-examination, inquired for the belief of the witness in the existence of a God, and a state of future rewards and punishments. This was, perhaps, a matter within the sound discretion of the court, to be controlled, as to character and extent of examination for the purposes of right and justice as the court, under the circumstances, might determine, not abusing such discretion. Wrae v. The State, 20 Ohio St. 460; 2 Taylor on Ev. § 1258.
Defendant’s religious belief was not a fact involved in the case, nor material to the issue. It was strictly a collateral matter. The course of examination and rulings of the court clearly indicate that it was thought to be a material fact in the case or matter relevant to the issue, and was a proper question on which to lay the foundation for contradicting the witness. And herein lies the error of the court. In the case of Harrison v. Gordon, 2 Lewin Or. Rep. 156, Alderson, B., said: “You may call a witness to contradict any fact material to the issue, but not to contradict such as goes only to the general credit of the witness, for that is a collateral issue.” Spenceley v. DeWellitt, 2 Lewin Or. Rep. 154; 1 Greenlief’s Ev. § 449; Starkie on Ev. *200; 2 Taylor on Ev. §§ 1292, 1293 ; People v. McKeller (Superior Court of California, April 11, 1868); The Reporter, vol. 5, 685.
The preliminary examination was in March, 1874, and the trial, on which this record was made, wras in October of the same year. Without entering into the discussion of the mooted question, whether á witness may be allowed *35 to testify in relation to his religious belief, when his competency, on that account, is called in question, the course of examination in this case conceded Clinton’s competency.
Whatever might have beeu the result of his examination as to his belief in the existence of a God, ou the preliminary trial, his answers on the final trial clearly showed his qualification to take the necessary oath. Persons change their opinions for reasons satisfactory to themselves ; and when a man changes from a state of disbelief in the existence of a God to that of belief, it should not be set down to his discredit. Nor should such change be open to contradiction. If sacred - history may bo credited, Saul of Tarsus, who believed, as the Jews did, iu a God, added to his faith belief in the divinity of the Son of God in a much shorter space of time. We doubt not profane history would furnish many instances where persons have changed their religious opinions in shorter time than that which intervened between the examinations of Clinton.
The cross-examination could not serve as a foundation to authorize the introduction of other witnesses to discredit Clinton, on the facts of this case, for two reasons: 1. Because the state Avas concluded by his answers; 2. Because the question was collateral and irrelevant to the issue.
Reversed and remanded for further proceedings.